IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JERRY A. HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.  04-083-GMS-LPS |
| | ) | |
| CITY OF DOVER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION AND ORDER
## REGARDING VARIOUS MOTIONS

**I.     INTRODUCTION**

The plaintiff Jerry A. Hurst ("Hurst" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 5, 2004.  (Docket Item ("D.I.") 2)  He also raises supplemental state claims under Delaware law.  Hurst appears *pro se.*  On March 1, 2004, he was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915.  (D.I. 4)

The allegations in this case stem from Hurst's criminal conviction in the Court of Commons Pleas, Sussex County, Delaware, for resisting arrest, falsely reporting an incident, and disorderly conduct.  The conviction was affirmed by the Delaware Supreme Court in *Hurst v. Delaware*, 832 A.2d 1251, 2003 WL 21810821 (Del. Aug. 4, 2003).  Hurst initiated the current suit against the City of Dover, Delaware ("City of Dover"); Dover police officers Chief Jeffrey Horvath ("Horvath"), Lt. Benton Counselman ("Counselman"), and Sgt. Steven Getek ("Getek"); the City of Rehoboth Beach, Delaware ("City of Rehoboth Beach"); Rehoboth Beach police officers Chief Keith Banks ("Banks"), Cpl. Paul Parsons ("Parsons"), officer Jaimie Riddle ("Riddle"), officer Michael Armstrong ("Armstrong"), Ptlw. Bonnie Ladd ("Ladd"), and Sgt.

Collette Sutherland ("Sutherland"); Rehoboth Beach EMT's John Wothers ("Wothers") and

Tammie Morrison ("Morrison"); Rehoboth Beach City Solicitor Walter Speakman

("Speakman"); Delaware Court of Common Pleas Judge Merrill C. Trader ("Judge Trader");

clerk and assistant to Judge Trader, Linda White ("White"); court reporter Linda Lavender

("Lavender"); Clerk of the Delaware Court of Common Pleas, Doris Wilkins ("Wilkins");

Prothonotary, Joyce Collins ("Collins"); Sussex Correctional Institute ("SCI") Warden Rick

Kearney ("Warden Kearney"); SCI; Deputy Attorneys General Veronica Faust ("Faust") and

Christine Tunnell ("Tunnell"); and unknown defendants, John Does I through X.[1] Hurst seeks

compensatory and punitive damages, as well as declaratory and injunctive relief and other

associated costs and relief.  In addition, Plaintiff named all individual defendants personally as

well as in their official capacities.

Hurst's original complaint contained the following counts: Count I, 42 U.S.C. § 1983, for

conspiracy to cover-up alleged violations in the judicial system of Delaware of applicable laws,

regulations, court rules, ethical canons, constitutional and civil rights, and to commit numerous

acts in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights; Count II,

intentional infliction of emotional distress; Count III, negligent training and supervision; Count

IV, malicious abuse of process and prosecution; Count V, intentional and/or negligent exposure

to tuberculosis; Count VI, a second conspiracy claim against all the defendants and specifically

naming Wilkins, Lavender, Judge Trader, Faust, Tunnell, and Speakman; and Counts VII

through XIII, supplemental state claims.

---

[1]John Does I through X are named as defendants in the text of the complaint, but do not
appear in the caption and were inadvertently omitted from the listing in the court docket.

United States District Judge Kent A. Jordan, to whom this case had been assigned, screened the original complaint, and on January 24, 2006, dismissed all claims raised against SCI and Warden Kearney, as well as Counts IV, V, and VII. (D.I. 5) Hurst was allowed to proceed with the remaining claims against the remaining defendants, and service proceeded.

On December 15, 2006, Judge Jordan was elevated to the U.S. Court of Appeals for the Third Circuit, and this case was reassigned to the vacant judgeship. It was referred, first, to U.S. Magistrate Judge Mary Pat Thynge and later to U.S. Magistrate Judge Leonard P. Stark. (D.I. 33, 64, 77) On February 1, 2008, the case was reassigned to Chief U.S. District Judge Gregory M. Sleet, who continued the reference to Magistrate Judge Stark.

On April 17, 2008, I granted Hurst's motion (D.I. 75) for leave to file a first amended complaint, and that first amended complaint (the "Complaint") was deemed filed instanter (D.I. 79). On that same date, having screened the Complaint pursuant to 28 U.S.C. § 1915, I also issued a Report and Recommendation (D.I. 80) wherein I recommended that: (i) the claims contained in the Complaint against proposed new or reinstated defendants – Justice of the Peace McKenzie, Correctional Medical Services, R.N. Whittle, Hubert Pey, P. Harrison, B. A. Gunter, Dr. Burns, the Delaware Public Health Laboratory, Sussex County, Robert Stickles, Beverly Giles, Sgt. BJ, Bryan Hurd, and Warden Kearney – be dismissed as barred by the applicable statute of limitations and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); (ii) Counts IV, V, and VII not be reinstated to the Complaint and remain dismissed pursuant to the Court's January 24, 2006 Order; (iii) all claims raised by the Plaintiff on behalf of other detainees or inmates be dismissed; and (iv) Count XIV, the contempt claim, be dismissed as against all defendants. On June 16, 2008, the Court issued a

3

Memorandum and Order (D.I. 84) adopting my Report and Recommendation and dismissing the claims as therein set forth.  Later, by Order entered July 8, 2008, the Court dismissed Plaintiff's claims against defendants Wothers and Morrison for lack of service.  (D.I. 87)

The Complaint references the statement of facts contained in the complaint filed in *Hurst v. City of Rehoboth Beach,* Civil Action No. 03-362-SLR (the "*Rehoboth* action"), in which Hurst alleged a deprivation of his rights under 42 U.S.C. § 1983 and 18 U.S.C. § 242, as well as violations of various state rights.  The allegations in the *Rehoboth* action concern alleged actions taken prior to and after Hurst's arrest on April 10, 2001, but before his criminal court proceedings.  The Complaint in the instant case (which I will hereafter call the "*Dover* action") refers to the *Rehoboth* action, but for the most part relates to a time-frame later subsequent to that at issue in the *Rehoboth* action.  (D.I. 75)  Thus in distinguishing the *Rehoboth* action from the instant *Dover* action, this Court has previously explained that the allegations in the *Rehoboth* action focus on events surrounding Hurst's arrest, whereas the *Dover* action "refers to the related action but focuses more on events occurring after Hurst's arrest, including subsequent court hearings."[2]  (D.I. 84)

A scheduling order was entered on April 17, 2008, pursuant to which discovery was due to be completed by October 17, 2008, and summary judgment briefing was due to be completed

---

[2]The *Rehoboth* action, and any allegations related to it, was dismissed by this Court, a disposition later affirmed by the Third Circuit. *See Hurst v. City of Rehoboth Beach,* 2008 WL 2916374, at *4 (3d Cir. July 30, 2008) (per curiam) (affirming *Hurst v. City of Rehoboth Beach,* 2005 WL 823867 (D.Del. Mar. 31, 2005), *Hurst v. City of Rehoboth Beach,* 2006 WL 416864 (D.Del. Feb. 21, 2006), and *Hurst v. City of Rehoboth Beach,* 2006 WL 2347661 (D. Del. Mar. 21, 2006)).

by December 8, 2008.[3]  (D.I. 81)

Pending before the Court are three motions for summary judgment:

1.      A motion filed by defendants City of Rehoboth Beach and Speakman (collectively, the "City of Rehoboth Beach Defendants"). (D.I. 134)  Defendants City of Dover, Horvath, Counselman, and Getek (collectively, the "Dover Defendants") also joined in the City of Rehoboth Beach Defendants' Summary Judgment Motion. (D.I. 139)

2.      A motion filed by defendants Banks, Riddle, Armstrong, Parsons, Ladd, and Sutherland (collectively, the "Rehoboth Beach Officer Defendants"). (D.I. 137)  The Dover Defendants joined in the Rehoboth Beach Officer Defendants' Summary Judgment Motion as well. (D.I. 139)

3.      A third motion filed by defendants Judge Trader, White, Wilkins, Collins, Lavender, Faust, and Tunnell (collectively, the "State Defendants"). (D.I. 140)

Also before the Court is the State Defendants' Motion to Dismiss the Complaint (D.I. 127) ("State Defendants' Motion to Dismiss"), as well as their Motion for Protective Order and/or Motion to Stay (D.I. 122) ("State Defendants' Motion to Stay").  Finally, the Court must consider several motions filed by Plaintiff: a Motion for Full Faith and Credit (D.I. 129)

---

[3]While the deadlines for discovery and summary judgment briefing have passed, and Plaintiff has had an ample and full opportunity to take discovery, it does not appear that Plaintiff has deposed any witnesses or otherwise offered any admissible evidence to sustain his ultimate burden in this matter.  Moreover, when Hurst was asked at his deposition about records supporting his claims, he refused production and suggested that defendants had the burden of obtaining records to prove his case, stating: "You're going to have to get some of these records . . . I'm trying to be helpful beyond what is necessary.  But if you talk to . . ., they have documents that would have that.  And if they're not in that, it would be part of this state's records in submissions in the underlying sham trial."  Thus, Hurst has refused to produce to defendants any evidence that may exist to support his claims.  (D.I. 136 at DH374-75; *see also* D.I. 135 at 14-15, 21)

5

("Plaintiff's Motion for Full Faith and Credit"), a Motion Pursuant to Fed. R. Civ. P. 56(f) and

Motion to Compel Pursuant to Fed. R. Civ. P. 37 (D.I. 130) ("Plaintiff's Motion to Compel"),

and a Motion in Regard to Transcript and Correction of Errors of Record (D.I. 145) ("Plaintiff's

Miscellaneous Relief Motion").

For the reasons that follow, I recommend that City of Rehoboth Beach Defendants'

Summary Judgment Motion, Rehoboth Beach Officer Defendants' Summary Judgment Motion,

and State Defendants' Summary Judgment Motion be granted with respect to the federal counts.

I also recommend that the Court decline to exercise supplemental jurisdiction and dismiss the

state law claims without prejudice.  I further recommend that State Defendants' Motion to

Dismiss be denied as moot.  Finally, I order that State Defendants' Motion to Stay be denied as

moot, and that Plaintiff's Motion for Full Faith and Credit, Motion to Compel, and

Miscellaneous Relief Motion also be denied as moot.

## II.    BACKGROUND

Plaintiff's Complaint recites a litany of events and alleged constitutional and other

violations.[4]  For purposes of this Report and Recommendation, I also take note of the relevant

background history of the various related state and federal court cases which have been

previously set forth in detail in this Court's Reports, Memorandum Opinions, and Orders (Civil

Action No. 03-362-SLR; Civil Action No. 04-83-GMS-LPS; and Civil Action No. 06-146-KAJ),

in the Third Circuit's affirmance in *Hurst v. City of Rehoboth Beach*, 2008 WL 2916374 (3d Cir.

July 30, 2008), and in the underlying Delaware Superior Court and Delaware Supreme Court

---

[4]Where there are disputes of fact, all reasonable inferences are drawn in Plaintiff's favor.
As is evident from my recommendation to grant summary judgment in favor of all of the
remaining defendants, however, I do not believe there are genuine issues of material fact.

6

proceedings in *Hurst v. Delaware*, 2003 WL 1387136 (Del. Super. Feb. 11, 2003), *aff'd*, 832 A.2d 1251 (Del. 2003).

The City of Rehoboth Beach Defendants move for summary judgment because Hurst has failed to offer any evidence in support of his federal and state law claims, and, accordingly, there are no genuine issues of material fact, necessitating judgment in favor of the defendants.

The Rehoboth Beach Officer Defendants move for summary judgment for the same reasons and on the additional grounds that they are entitled to qualified immunity.

The State Defendants move for summary judgment on similar grounds as their co-defendants and also contend: Hurst's previously complained of discovery and procedural issues, including claims of fraud or cover-up, concerning the criminal proceedings against him in the Delaware Court of Common Pleas, were addressed previously by the Delaware Superior Court and the Delaware Supreme Court; Hurst's state law claims against the State Defendants in their individual capacities are barred by the State Tort Claims Act or are unsupported by evidence; Hurst has failed to offer any evidence that the defendants engaged in a conspiracy; Plaintiff's claims against Judge Trader are barred by absolute judicial immunity; the judicial assistant, official court reporter, court clerk, and prothonotary defendants are entitled to quasi-judicial immunity; the claims against the prosecutor defendants are barred by absolute prosecutorial immunity; and Hurst's claims are barred under the Eleventh Amendment and the doctrine of sovereign immunity, as well as by the Rooker-Feldman doctrine.

Because there is no genuine issue of material fact with respect to any of Plaintiff's claims on the merits, and the defendants are entitled to judgment as a matter of law, I will only address some of the defendants' multiple defenses.

7

### III.   LEGAL STANDARDS

#### A.   Section 1983

In a § 1983 action, a plaintiff must prove two essential elements to prevail: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federally secured right. *See West v. Atkins,* 487 U.S. 42, 48 (1988)*; see also Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Section 1983 is not a source of substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Rather, it is a means to redress violations of federal law by state actors. *Id.*; *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-99 (M.D. Pa. 2005).

A municipality may only be held liable under section 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (stating that to establish municipality liability under section 1983, a plaintiff must offer evidence of a policy or custom that proximately caused his injuries). While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (internal quotation marks omitted) (citing *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *See Bd. of the County Comm'rs of Bryan County, Okl. v.*

8

*Brown*, 520 U.S. 397, 402 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

For a successful conspiracy claim, there must be evidence of: (1) an actual violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate that right. *See Williams v. Fedor*, 69 F. Supp. 2d 649, 665-66 (M.D. Pa. 1999), *aff'd*, 211 F.3d 1263 (3d Cir. 2000). In establishing a conspiracy, a plaintiff must offer some factual basis to show a combination, agreement or understanding, other than his own conclusions of a conspiracy, to survive summary judgment. *See McGowan v. Borough of Ambridge*, 2008 WL 4200153, at *9 (W.D. Pa. Sept. 5, 2008).

### B. Summary Judgment

A grant of summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party has carried its burden, the nonmovant must

then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (internal citation and quotation marks omitted). However, to defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment must present more than just "bare assertions, conclusory allegations or suspicions" to show existence of genuine issue) (citation omitted). The non-moving party's failure to offer colorable or significantly probative evidence for an essential element on which it has the burden of proof entitles the moving party to summary judgment. *See Anderson,* 477 U.S. at 250; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

## IV.    DISCUSSION

### A.    <u>City of Rehoboth Beach Defendants' Summary Judgment Motion</u>

#### 1.    City of Rehoboth Beach

##### a.    *Violation of Civil Rights and Conspiracy*

In Count I of his Complaint, Hurst alleges that the City of Rehoboth Beach Defendants engaged in a policy, practice, usage and custom to employ corrupt employees and to cover-up constitutional, statutory, regulatory, and ethical violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. § 1983. Hurst's allegations of civil rights violations are seemingly based on an alleged civil conspiracy

among the defendants to interfere and obstruct justice in connection with his Delaware criminal

proceedings.

For instance, after his arrest, on April 26, 2001, Hurst filed a "Statement of Facts" with

the City of Rehoboth Beach providing a summary of his allegations of police brutality,

warrantless entry, unlawful detainment, and corruption. (*See* D.I. 135 & D.I. 136, Ex. 1)

According to Hurst's October 16, 2008 deposition testimony, he also informed numerous

officials about his allegations and demanded a full investigation. (*See* D.I. 135 & D.I. 136, Ex.

16 at DH179-81) An investigation was commenced. (*See* D.I. 135 & D.I. 136, Ex. 3) His

complaints to the City of Rehoboth Beach were turned over to the City of Dover Office of

Internal Affairs for an investigation to focus on the use of force utilized by the individual

Rehoboth Beach officers. (*Id.*) Because there was some delay between Hurst's request for the

investigation and its commencement (several weeks, approximately), Hurst believes that the City

of Dover conspired with Banks -- the police chief for the City of Rehoboth Beach -- based on

Banks' delay in requesting an investigation. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH269) Hurst

asserts there "could have been" communications during this time frame, but does not know what,

if any, communications were made, nor the substance of the purported statements. (*See* D.I. 135

& D.I. 136, Ex. 16 at DH270). Similarly, Hurst alleges that Speakman and Banks trained officers

to obtain perjured affidavits. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH306-07) Hurst also thinks

that Speakman "got to the police, [and] coached them" to file a supplemental police report to

cover-up any illegal break-in into his hotel room. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH211-12)

The results of the City of Dover's investigation exonerated all City of Rehoboth Beach police

officers, finding no unjustified or improper use of force related to the incident with Hurst. Hurst

11

claimed that the investigation was inadequate and wrote a letter to Counselman informing Counselman of his belief that Counselman was an active participant in a coverup for the Rehoboth Police Department. (*See* D.I. 135 & D.I. 136, Ex. 2, Ex. 16 at DH201-02)

After his conviction, Hurst alleged fraud in his trial and a conspiracy between the prosecutor, Speakman, and the Delaware judicial staff to suppress and destroy evidence and improperly interfere with his trial. (*See* D.I. 135; D.I. 75 ¶¶ 39-41) Specifically, Hurst claims that he had no notice of the trial, and that the prosecutor – at Speakman's direction – failed to turn over materials to Hurst for his trial. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH188-89, 208-10, 218, 221-22, 396; D.I. 75 ¶¶ 39-40) As further "evidence" of a conspiracy, Hurst says he observed Speakman speak with Judge Trader at the courthouse, mention his name a few times, and cease their "illegal conversation" when they noticed Hurst's presence. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH213-15, 218) Hurst also believes that Judge Trader's assistant, White, conspired against him by misrepresenting that one of Hurst's motions would be heard on February 5, 2002, even though it had been dismissed. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH243-44) Similarly, Hurst believes that Banks interfered with his trial by asking the prosecutor to falsify information to protect the City of Rehoboth Beach police. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH303-04) Finally, Hurst alleges that the prosecutor wrote a letter in which she admitted that Banks interfered in his trial – although such letter has never been produced or its existence ever confirmed. (*See* D.I. 135 & D.I. 136, Ex. 16 at DH304)

As an initial matter pointed out by the defendants, any of the Complaint's allegations that relate to his arrest and other conduct prior to his state criminal trial were raised and dismissed in Hurst's earlier suit. *See Hurst v. City of Rehoboth Beach,*, 2008 WL 2916374 (3d Cir. July 30,

12

2008).

With respect to the remaining allegations, there is simply no testimonial or documentary evidence in the record supporting Hurst's claim of violations of his rights under § 1983. In particular, the record is devoid of any evidence establishing that the City of Rehoboth Beach promulgated a policy or custom to interfere with the judicial system, that the defendants knew of and acquiesced in such interference, that Speakman had final and unreviewable authority to implement any such policy, or that any violations or injury resulted. Further, Hurst has offered no evidence to support his contention of civil conspiracy in the municipal or Delaware judicial system related to the administrative investigation or his arrest and convictions, that Speakman or any other employee from the City of Rehoboth Beach unlawfully withheld any evidence or records or otherwise interfered with Hurst's criminal proceedings or trial, or that an "illegal" conversation, or any conversation at all, transpired between Speakman and Judge Trader. Such unsupported allegations are legally insufficient to render a municipality and these other city defendants liable under § 1983.

b.   *Intentional Infliction of Emotional Distress*

Count II of Hurst's Complaint alleges that the defendants intentionally caused emotional distress to Hurst through their actions. To establish intentional infliction of emotional distress in Delaware, a plaintiff must show that the defendant intentionally or recklessly caused severe emotional distress as a result of the defendant's extreme and outrageous conduct. *See Barker v. Huang*, 610 A.2d 1341, 1351 (Del. 1992). Conduct is extreme and outrageous where a reasonable person could not be expected to endure it. *See Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445, 453 (D. Del. 2007). The Court must consider the intensity and duration of

13

the conduct alleged. *Id.*

There is no evidence in the record that the City of Rehoboth Beach or Speakman engaged in any conduct, let alone extreme or outrageous conduct, that would lead a reasonable person to experience severe emotional distress as a result. Moreover, Hurst has failed to articulate what severe emotional distress he suffered.[5] Absent such evidence, there is no genuine issue of material fact in this regard. In any event, the City of Rehoboth Beach would be immune from any alleged intentional infliction of emotional distress claim under the County and Municipal Tort Claims Act (the "CMTCA"). *See* 10 Del. C. § 4011(a). The defendants are entitled to judgment as a matter of law.

c.   *Negligent Training and Supervision*

Count III of the Complaint alleges that the defendants failed to adequately train, hire, and supervise their employees, harming Hurst. To establish negligent supervision, a plaintiff must show that the employer was negligent in giving improper or ambiguous orders, in failing to make proper regulations, in employing improper persons involving risk of harm to others, or in the supervision of the employee's activity. *See Matthews v. Booth*, 2007 WL 1153128, at *3-4 (Del. Super. Apr. 19, 2007). An employer is negligent where he fails to exercise the ordinary care that a reasonable person would under the circumstances. *See Simms v. Christina Sch. Dist.*, 2004 WL

---

[5]As pointed out by defendants, although Hurst has attached medical records to his answering brief (D.I. 149), all of these records address treatment prior to the incident on April 9, 2001, with the sole exception of a prescription note for "physical therapy to the neck with massage and chiropractor" without any explanation. These records cannot support a claim for injuries sustained as a result of the incident. (D.I. 150) Hurst also has not offered any documentation regarding a claim of lost wages and income, no photographs of any injuries, and no expert witnesses to support his claims. (*See, e.g.,* D.I. 138; D.I. 136, Ex. 16 at DH231-32, 334)

14

344015, at *8 (Del. Super. Jan. 30, 2004) (citing *Robelen Piano Co. v. Di Fonzo*, 169 A.2d 240,

244 (Del. 1961)).  The existence of a duty under a negligent hiring/supervision theory requires a

showing that the risk of harm to the plaintiff was reasonably foreseeable to the employer.  *See*

*Matthews*, 2007 WL 1153128, at *4.

Hurst has offered no evidence that the City of Rehoboth Beach improperly hired officers,

gave improper or ambiguous orders, implemented improper regulations, improperly supervised

its employees, or employed individuals who posed a risk of harm to others.  There is also no

showing that either Rehoboth or Speakman should have foreseen any improper conduct by their

employees that might cause harm to Hurst or others.  To the contrary, the record shows that the

City of Rehoboth Beach fulfilled its duty to properly instruct, regulate, and retain its employees

by the "Use of Force" policy that explicitly detailed when an officer may use force.  (*See* D.I. 135

at 27-28)  Such policy had been developed over time and been approved by the City of Rehoboth

Beach.  (*Id.*)  Hurst has offered no evidence contradicting the statements of the officers, the

report from the investigation into the actions of the City of Rehoboth Beach Police Department

by the City of Dover surrounding Hurst's arrest in April 2001 and alleged use of force (*see* D.I.

135 & D.I. 136, Ex. 3), or the other documentary evidence showing that the City of Rehoboth

Beach officers and Speakman behaved appropriately (*see* D.I. 135 at 28).

Likewise, Hurst has offered no evidence that Speakman negligently supervised, hired,

trained, or retained any employees, that Speakman had any decisionmaking authority over the

prosecutors in Hurst's criminal trial, or that Speakman had other employees whom he should

have foreseen would pose a risk to others.  In sum, Hurst's failure to put forth specific evidence

that employees of the City of Rehoboth Beach or Speakman acted improperly at any time

relevant to this case entitles these defendants to judgment as a matter of law.

It bears repeating that even if Hurst presented any evidence in favor of his claims, I agree that the City of Rehoboth Beach would be immune from any alleged negligence under the CMTCA, which immunizes municipalities for any negligent acts that cause bodily injury that are unrelated to the operation of vehicles, construction, or the dispersal of certain substances. *See* 10 Del. C. §§ 4011, 4012; *see also Willis v. City of Rehoboth Beach*, 2005 WL 1953028, at *2-3 (Del. Super. Ct. June 24, 2005) (finding plaintiff's claims of negligent supervision against City of Rehoboth Beach barred by CMTCA).

### d.   *Conspiracy*

Count VI alleges a conspiracy in which the defendants breached various contracts, obstructed justice, excluded Hurst from the appellate process, suborned testimony in his criminal trial, destroyed and/or tampered with evidence, and violated Court orders. Contrary to Hurst's assertions, the Delaware Supreme Court concluded that there was no fraud, cover-up, or discovery violations in connection with his criminal trial. *See Hurst v. Delaware*, 2003 WL 21810821, at *1. Hurst has offered no evidence in support of these additional conspiracy claims and, thus, I recommend that summary judgment be granted in defendants' favor.

The only "evidence" Hurst has attempted to offer for these conspiracy claims consists of various motions, requests, transcript excerpts, and orders related to his criminal trial in the Court of Common Pleas for Sussex County. None of these documents establish any conspiracy or violation of his constitutional rights, support a claim for damages, or demonstrate fraud in his criminal trial. They are insufficient to establish a genuine issue of material fact. Hurst's own myriad affidavits and declarations that wrongdoing occurred, without any evidence in support of

16

those claims, are not sufficient to overcome summary judgment. *See Union Ins. Soc'y of Canton, LTD v. William Gluckin & Co., Inc.*, 353 F.2d 946, 952-53 (2d Cir. 1965) (noting that affidavits submitted in support of or in opposition to motion for summary judgment must be rejected under Federal Rule of Civil Procedure 56(e) unless they contain admissible evidentiary facts); *see also Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987) (recognizing that "[s]ummary judgment, of course, looks only to admissible evidence"); *Maldonado v. Ramirez*, 757 F.2d 48, 50-51 (3d Cir. 1985) ("[Rule 56(e) requires that] affidavit must be made on personal knowledge, must set forth such facts as would be admissible in evidence[,] and must show affirmatively that the affiant is competent to testify to the matters stated therein . . .[T]he affiant must ordinarily set forth facts, rather than opinions or conclusions . . . [because an] affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.") (internal quotation marks omitted); *Bowers v. Rector and Visitors of Univ. of Va.*, 2007 WL 2963818, at *5 (W.D. Va. Oct. 9, 2007) ("It is axiomatic, that Rule 56(e) requires that any affidavit offered to support, or to oppose, a motion for summary judgment must present admissible evidence; it must not only be based on the affiant's personal knowledge but it must show that the affiant possesses the knowledge asserted.").[6]

---

[6]Much, if not all, of Plaintiff's deposition testimony is not admissible evidence. For example, as defendants explain: "[W]hen asked what he believed that Chief Banks did that was illegal, or in violation of the Rehoboth Beach Police practices on the night of April 9, 2001, Hurst responded that he did not believe that the police would have broken into his hotel room without a warrant unless that was ordered or trained by Chief Banks. *Id.* at 307. When further questioned as to what facts Hurst had to support that statement, he replied "[t]he fact that they actually broke in without a warrant . . . . I think Banks instructed them on trying to get a bogus warrant after the fact, and perjuring the affidavit if necessary." *Id.* at 308. Again, Hurst was questioned as to what facts he had to support the statement, he replied "That's what I think. Those are facts that I think exist." *Id.* at 308-310." (D.I. 138)

### 2.      Speakman

The claims against Defendant Speakman have already been discussed in connection with

the City of Rehoboth Beach.  To be clear, though, while the caption of the Complaint includes

Speakman in his individual and official capacity as City Solicitor for the City of Rehoboth

Beach, for the reasons previously discussed I must recommend grant of summary judgment in

favor of Speakman in both his individual and official capacity.  Plaintiff has not offered any

evidence in support of his claims that would permit a factfinder to grant him relief.

### 3.      City of Dover

The Dover Defendants joined in the City of Rehoboth Beach's Summary Judgment

Motion, as Plaintiff raises identical claims against the City of Dover as he does with respect to

the City of Rehoboth Beach.  There is no evidence of complicit behavior by the City of Dover

and its employees.  The municipal and individual liability claims against the Dover Defendants

fail for the same reasons as the claims against the City of Rehoboth Beach Defendants.

Accordingly, I recommend the grant of the summary judgment motion in their favor as well.

### B.      <u>Rehoboth Beach Officer Defendants' Summary Judgment Motion</u>

#### 1.      Rehoboth Beach Officer Defendants (Banks, Riddle, Armstrong, Parsons, Ladd and Sutherland)

##### a.      *Violation of Civil Rights and Conspiracy*

Plaintiff alleges that the Rehoboth Beach Officer Defendants engaged in a policy,

practice, usage, and custom to employ corrupt employees and to cover-up constitutional,

statutory, regulatory, and ethical violations of his Fourth, Fifth, Sixth, and Fourteenth

Amendment rights under the Constitution and § 1983.  While Hurst names each of these

18

defendants in their individual and official capacities as police officers for the City of Rehoboth Beach in the caption of his Complaint, he has offered no evidence to support any such claims.

As discussed *supra*, Hurst has failed to offer any evidence supporting the existence of a policy, practice, or custom on the part of the municipal defendants to interfere with the judicial system or Hurst's criminal proceedings, nor any causal connection between the execution of that policy, practice, or custom and Hurst's alleged injury.  Moreover, Hurst's assertions and allegations with respect to the police officers are related solely to his arrest or to actions before his criminal trial which have already been dismissed.  (*See* D.I. 138 at 4-8, 13-14; *Hurst v. City of Rehoboth Beach*, 2008 WL 2916374 (3d Cir. July 30, 2008))  In addition, the City of Dover Office of Internal Affairs investigated Hurst's complaints, exonerated the City of Rehoboth Beach police officers of any wrongdoing, and found that the minimal amount of force that had been used was justified, lawful, within policy, and immediately necessary to effect the arrest. Hurst has proffered no evidence, beyond his own mere unsupported assertions, which would support his conclusory allegations regarding any alleged conspiracy involving these defendants. Hurst's conclusory allegations are not sufficient to support his claim of violations of rights under § 1983.

The named defendants also point out that they are entitled to qualified immunity on the alleged facts of this case.  I agree.  To determine whether a state official is entitled to qualified immunity, the court must conduct a two-part inquiry:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

19

*Saucier v. Katz*, 533 U.S. 194, 201 (2001). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. It follows that if an officer made a reasonable mistake, he or she is entitled to qualified immunity. *Id.* Thus even if an officer was mistaken about the level of force needed under the circumstances, the law nonetheless affords him or her protection from his or her mistake under the doctrine of qualified immunity.

Importantly, the first step in analyzing a qualified immunity defense is to determine "whether the plaintiff has [alleged] a violation of a constitutional right at all." *Samuels v. Hall*, 2004 WL 1635529, at *4 (D. Del. July 19, 2004). Since Hurst's allegations of violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights are related to his arrest and to actions before his criminal trial and have already been dismissed, his Complaint is bereft of such an allegation. Moreover, Hurst has never articulated a statutory claim against the officers except for § 1983, " which does not provide any rights in and of itself but is simply the vehicle for asserting constitutional rights against those acting under color of state law." *Couden v. Duffey*, 305 F. Supp. 2d 379, 390 n.21 (D. Del. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). Thus, Hurst's section 1983 claim must fail.

    b.    *Intentional Infliction of Emotional Distress*

As discussed *supra*, Hurst has offered no evidence in support of this claim and has failed even to articulate what severe emotional distress he suffered.

    c.    *Negligent Training and Supervision*

As previously discussed, the record does not support a claim of improper training or

supervision that rises to the level of a constitutional violation against the defendants.

d.   <em>Conspiracy</em>

Count VI alleges a conspiracy among the defendants in which they breached various contracts, obstructed justice, excluded Hurst from the appellate process, suborned testimony in his criminal trial, destroyed and/or tampered with evidence, and violated Court orders. Other than his bare allegations, however, Hurst has failed to offer any evidence to support such additional conspiracy claims.

Moreover, as has already been pointed out, Hurst's allegations against the police officers are related to his arrest or to actions occurring before his criminal trial in Delaware State Court, and any conduct before the criminal proceedings is not at issue and has been dismissed. Also, contrary to Hurst's assertions, the Delaware Supreme Court concluded that there was no fraud, cover-up, or discovery violations in connection with his trial, and that those claims were completely unsupported by the record. *See Hurst v. Delaware*, 2003 WL 21810821, at *1.

Therefore, I recommend the grant of summary judgment in favor of these defendants in both their individual and official capacities, because Plaintiff has failed to offer any evidence to support his alleged claims against them.

### 2.   Dover (Officer) Defendants (Horvath, Counselman, and Getek)

The Dover Defendants also joined in the Rehoboth Beach Officer Defendants' Summary Judgment Motion. As earlier explained, it appears that Hurst's allegations with respect to these Dover police officers are related to the performance of an internal affairs administrative investigation into the actions of the City of Rehoboth Beach Police Department surrounding Hurst's 2001 arrest in the City of Rehoboth Beach. (*See* D.I. 138 at 6-8; D.I. 139) The investigation resulted in a conclusion that there had been no misconduct. As in the case of the

21

Rehoboth Beach Officer Defendants, there is no evidence of complicit behavior on the part of these Dover defendants. Accordingly, I must recommend the grant of summary judgment in favor of these Dover (officer) defendants in both their individual and official capacities.

### C.   State Defendants' Summary Judgment Motion

#### 1.   Judge Trader

In his Complaint, Hurst names Judge Trader as a defendant. As pointed out by the State Defendants, Judge Trader is mentioned in reference to allegations that he

> arranged for his secretary, Linda White, to lie to Hurst on February 4, 2002
> concerning the trial proceedings the following day (D.I. 2, ¶31); first notified
> Hurst that Hurst's motions were denied and ordered an instant trial "right now."
> (D.I. 2, ¶32); contrary to the evidence code, required authentication by witnesses
> of medical reports and excluded the reports, excluded all police reports including
> the entire Internal Affairs Report and a critical portion of the second "911" call,
> and precluded all defense witnesses (D.I. 2, ¶32); issued a written order denying
> Hurst's access to transcripts, as indicated in his order dated July 23, 2002 that he
> lacked "jurisdiction" to issue the order (D.I. 2, ¶33); and discussed Hurst's case
> during the lunch break of the February 5, 2002 trial, attempted to intimidate Hurst
> by glowering at Hurst, and failed to recuse himself (D.I. 2, ¶38).

(D.I. 141 at 2; *see also* D.I. 75 ¶¶31-33, 38)

Judges are absolutely immune from suits relating to their judicial duties for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity can only be overcome if the judge has acted outside the scope of his judicial capacity or in the "complete absence of all jurisdiction." *Id.* at 11-12. While Hurst recites the correct phrases, he offers nothing more than conclusory assertions, and no admissible evidence. Hurst relies upon court documents and actions, and alleged conversations, but he has offered no evidence that Judge Trader acted outside the scope of his judicial capacity or in the absence of his jurisdiction. *See id.* at 11. Judge Trader is immune from suit for monetary liability under 42 U.S.C. § 1983, and accordingly, I recommend

that summary judgment be granted in his favor.

### 2.   White, Wilkins, Collins, Lavender

Hurst's claims against defendants White, Wilkins, Collins, and Lavender fail for the

additional reason of quasi-judicial immunity.  Judicial immunity has been extended to clerks and

prothonotaries when such individuals are "performing a ministerial function at the direction of

[a] judge," *Waits v. McGowan*, 516 F.2d 203, 205-206 (3d Cir. 1975), performing ministerial

duties of a judicial nature pursuant to a statute, *see Smith v. Rosenbaum*, 460 F.2d 1019, 1020 (3d

Cir. 1972), or performing acts which are judicial in nature and integral to the judicial process, *see*

*Waits*, 516 F.2d at 205-06; *Smith*, 460 F .2d at 1020.  Such immunity has also been applied to

court staff, such as court reporters, who are acting in their official capacities.  *See Marcedes v.*

*Barrett*, 453 F.2d 391, 391 (3d Cir. 1971) (holding that judicial or quasi-judicial immunity

applied to clerk of courts, supervisor on staff of clerk of courts, administrative assistant to

president judge, and court reporter).

Here, as accurately recounted by counsel, the allegations are that White, as secretary to

Judge Trader

> lied to Hurst on February 4, 2002 concerning the trial proceedings the following
> day, specifically, that White repeatedly lied, stating explicitly that the orders
> would be heard on February 5, 2002; Hurst would immediately drive to
> Georgetown, DE and file a writ of prohibition on the morning of February 4, 2001
> [sic] if he was not assured that the motions would be heard, rather than the trial,
> on February 5, 2002 (D.I. 2, ¶31); and that the typed order denying the motions
> three days early was completely concealed on the telephone call from Hurst as he
> specifically requested assurance of the scheduling for the motions and trial (D.I. 2,
> ¶31).

(D.I. 141 at 3; *see also* D.I. 75 ¶31)

As to the court clerk, Wilkins, Hurst contends that she

in open violation of the very court rules controlling her actions and

responsibilities, refused to perform the purely ministerial act of complying with the "Transcript Request" filed by Hurst. Rather, Hurst contends, by corrupt arrangement, Wilkins sent the "Transcript Request" to Judge Trader for his issuance of the illegal and invalid (for lack of jurisdiction) order. (D.I. 2, ¶35) Hurst further contends that Wilkins, in violation of applicable law and court rules, made numerous written threats (arrest and suspension of Virginia drivers license) to extort payment of part of the fines when such fines were completely stayed by law while on appeal, and breached a formal contract between Hurst and her office that when the appeal was concluded, Hurst would make certain periodic payments on condition that said payments were stayed during the appeal. (D.I. 2, ¶36)

(D.I. 141 at 3; *see also* D.I. 75 ¶¶35-36)

Also, as to the court prothonotary, Collins, Hurst alleges that she

fabricated a false court document, representing that both transcripts were filed in the Superior Court when a transcript of a November 19, 2001 hearing before Judge Beauregard of the Court of Common Pleas was never filed in that court, contrary to the false certification of Linda Lavender. (D.I. 2, ¶37) Hurst further claims that, despite a Rule 9(i) motion in the Superior Court, specifically objecting that the transcripts had not been available for use in the Superior Court appeal, Collins willfully failed to correct the matter or to correct the Superior Court docket. Hurst alleges that Collins subsequently confessed that the November 19, 2001 transcript had never been filed in the Superior Court. (D.I. 2 ¶37)

(D.I. 141 at 4; *see also* D.I. 75 ¶37)

Finally, as to the official court reporter, Lavender, Hurst contends that she, "in compliance with Judge Trader's order, secretly withheld the November 19, 2001 transcript and falsely certified that she had duly [sic] filed it with the Superior Court. (D.I. 2, ¶34)." (D.I. 141 at 4; *see also* D.I. 75, ¶34)

Not only does Hurst fail to offer any evidence in support of his claims that these defendants violated his civil rights, but these defendants are entitled to judgment in their favor on the grounds of quasi-judicial immunity, as all of the alleged actions – even assuming they occurred – were plainly integral to the judicial process. Accordingly, I recommend that summary judgment be granted in their favor.

24

### 3.     Faust and Tunnell

Hurst contends that Deputy Attorneys General Faust and Tunnell

> performed investigative and administrative acts, as well as other acts outside their
> traditional advocacy roles, in that they participated in and provided legal advice to
> police during an investigation including an Internal Affairs Report; provided legal
> advice regarding pre-arrest investigations of Hurst; fabricated false evidence; used
> evidence known by them to be false, fabricated, and perjured on its face, even
> after admission of such perjury under oath by State witnesses; and arranged with
> others to provide and actually provide unlawful and unethical legal advice and
> representation on personal rights so as to undermine and obstruct justice, with
> these acts being done under the guise of their prosecutorial role; knowingly
> participated in and used the scheduling fraud perpetrated by Judge Trader and
> Linda White; and knowingly participated in and used the fraudulent withholding
> of the November 19, 2001 transcript. (D.I. 2 ¶41)

(D.I. 127 at 5; *see also* D.I. 75 ¶ 41)

Deputy Attorney General Tunnell initially worked as the prosecutor on Hurst's criminal

case; thereafter, Deputy Attorney General Faust prosecuted the case through trial on February 5,

2002. (*See* D.I. 127 at 15-16) The Third Circuit has defined the scope of absolute immunity for

prosecutors including "activity taken while in court, such as the presentation of evidence or legal

argument, as well as selected out of court behavior intimately associated with the judicial phases

of litigation." *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994) (internal quotation marks

omitted). In other words, "a prosecutor or other official performing a quasi-prosecutorial

function for the state is entitled to absolute immunity for official actions taken on behalf of the

State that are integrally related to the judicial process." *Ernst v. Child & Youth Servs. of Chester

County*, 108 F.3d 486, 502 (3d Cir. 1977); *see also Imbler v. Pachtman*, 424 U.S. 409, 427

(1976) (describing prosecutorial immunity from liability under § 1983). Accordingly, Hurst's

claims against Tunnell and Faust must fail, and I recommend that summary judgment be granted

in their favor.

25

State Defendants also move for summary judgment from liability in their official capacities pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment shields states from suits by individuals absent a state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Thus, § 1983 claims for monetary damages against a state or a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

Here, the State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, I recommend that the Court grant the State Defendants' request for summary judgment to the extent that Plaintiff seeks monetary damages from all State Defendants in their official capacities.

### D.    John Does I through X

The Complaint contains insufficient allegations against John Does I through X. The Complaint contains no names, specific dates, or times as to any of the Doe defendants. Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court can nonetheless consider whether the Plaintiff has stated a claim for which relief can be granted against these unnamed defendants. Yet no supplementation or supporting evidence has been offered by Hurst. Consequently, the Court should dismiss the Complaint against these defendants for failure to state a claim. I recommend that the claims against Does I through X be dismissed as failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

E.   **Supplemental Jurisdiction**

Counts VIII through XIII allege various state law claims arising from defendants'

conduct, including abuse of process, negligence, gross negligence, assault and battery, conversion

and/or theft, and breach of contract. (*See* D.I. 75 ¶¶ 85-86)  As explained *supra*, however, Hurst

has offered no evidence in support of any of his federal claims, other than his own conclusory

assertions.  Accordingly, my further recommendation is that the Court decline to exercise

jurisdiction over Hurst's supplemental state law claims and that these claims be dismissed

without prejudice. *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309

(3d Cir. 2003).

G.   **Miscellaneous Pending Motions**

Finally, because I recommend that the three summary judgment motions be granted on all

federal counts of the Complaint in favor of all of the remaining defendants and that the Court

decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice, I

recommend that State Defendants' Motion to Dismiss be denied as moot.  I also order that State

Defendants' Motion to Stay be denied as moot, and that Plaintiff's Motion for Full Faith and

Credit, Plaintiff's Motion to Compel, and Plaintiff's Miscellaneous Relief Motion all be denied

as moot.

## V.   CONCLUSION

In sum, Hurst's repeated statements in his pleadings, correspondence, affidavits and

declarations, and deposition testimony that wrongdoing occurred, without any admissible

evidence in support of those statements, constitute mere conjecture and are not sufficient to

defeat defendants' summary judgment motions.  Hurst's unsupported, conclusory allegations are

simply not enough.  Thus, for the reasons set forth above:

27

1.    I recommend that City of Rehoboth Beach Defendants' Summary Judgment Motion, as joined in by the Dover Defendants, be GRANTED on all federal counts.

2.    I recommend that Rehoboth Beach Officer Defendants' Summary Judgment Motion, as joined in by the Dover Defendants, be GRANTED on all federal counts.

3.    I recommend that State Defendants' Summary Judgment Motion be GRANTED on all federal counts.

4.    I recommend that the Court decline to exercise supplemental jurisdiction and dismiss all of Plaintiff's state law claims without prejudice.

5.    I recommend that State Defendants' Motion to Dismiss be DENIED as moot.

6.    The State Defendants' Motion to Stay is hereby DENIED as moot.

7.    Plaintiff's Motion for Full Faith and Credit is hereby DENIED as moot.

8.    Plaintiff's Motion to Compel is hereby DENIED as moot.

9.    Plaintiff's Miscellaneous Relief Motion is hereby DENIED as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In *Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

The Clerk of the Court is hereby directed to mail a copy of this Report and

Recommendation and the standing order referred to above to Plaintiff.

Honorable Leonard P. Stark
United States Magistrate Judge

February 13, 2009
Wilmington, Delaware